UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAPITAL PARTNERS FUNDING, LLC, a California Limited Liability Corporation,<br><br>　　　　　　　　Plaintiff,<br>v.<br><br>TRANS-SPEC TRUCK SERVICE, INC., a Massachusetts Corporation; TRIPLE H TRANSPORTATION, INC., a Massachusetts Corporation; BERLIN TRANSPORTATION, INC., a Massachusetts Corporation; JOSEPH HOWARD, an individual; WILLIAM HOWARD, an individual, and DOES 1 through 10, inclusive,<br><br>　　　　　　　　Defendants. | Civil No. 12cv0587 AJB (JMA)<br><br>ORDER GRANTING DEFENDANTS' MOTION TO SET ASIDE DEFAULT JUDGMENT<br><br>(Doc. No. 17) |

　　　On October 10, 2012, Plaintiff Capital Partners Funding, LLC ("Capital") obtained a default judgment in the amount of $360,300.78, against Defendants Trans-Spec Truck Service, Inc. ("Trans-Spec"), Triple H Transportation ("Triple H"), Berlin Transportation ("Berlin), Joseph Howard, and William Howard (collectively, "Defendants").[1] (Doc. No. 15.) Defendants now move to vacate the default judgment and the underlying entry of default. (Doc. No. 17.) Pursuant to Civil Local Rule 7.1.d.1, the Court finds the motion suitable for determination on the papers and without oral argument. Accordingly, the motion hearing scheduled for January 24, 2013 is hereby vacated. For the reasons set forth below, the Court **GRANTS** Defendants' motion.

---

[1] The total judgment was comprised of $215,345.42 in monetary damages, $113,029.64 in prejudgment interest, and $31,925.72 in attorneys' fees and costs.

## *BACKGROUND*

Capital is a leading factoring provider offering funding to thousands of businesses nationwide. On March 26, 2010, pursuant to a Factoring Master Agreement ("Factoring Agreement") between Capital and Trans-Spec, Capital purchased accounts receivables from Trans-Spec, providing Trans-Spec with an immediate infusion of cash. To induce Capital to enter into the Factoring Agreement, Trans-Spec executed a Continuing Guaranty and Security Agreement ("Guaranty"), whereby Defendants Joseph Howard and William Howard personally guaranteed to pay all amounts due and owing in connection with the Factoring Agreement in the event Trans-Spec failed to honor its obligations.

On May 8, 2012, after countless attempts to collect on the unpaid balance from both Trans-Spec and guarantors Joseph and William Howard, Capital filed the operative complaint. The complaint alleged seven causes of action, including: (1) breach of contract (factoring agreement); (2) breach of contract (guarantor agreement); (3) breach of the implied covenant of good faith and fair dealing; (4) intentional misrepresentation; (5) negligent misrepresentation; (6) accounts stated; and (7) unfair competition. The complaint further alleged that although Triple H and Berlin were not signatories to the Factoring Agreement or the Guaranty, each was jointly and severally liable as the alter egos of Trans-Spec. On April 17, 2012, Capital filed a request for entry of default, (Doc. No. 8), and on April 18, 2012, the Clerk of the Court entered default against all Defendants. (Doc. No. 9). Subsequently, on October 10, 2012, the Court granted in part and denied in part Capital's motion for default judgment.[2] (Doc. No. 10). Just over a month later, Defendants filed the instant motion to vacate and set aside the default judgment. (Doc. No. 17.)

## *LEGAL STANDARD*

Pursuant to Rule 55, subdivision (c), a district court may set aside the entry of default upon a showing of good cause. Once default judgment has been entered, relief is governed by Rule 60(b). Where a defendant seeks relief under Rule 60(b)(1) based upon "excusable neglect," the court applies the same three factors governing the inquiry into "good cause" under Rule 55(c). *United States v. Signed Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010) ("*Mesle*");

---

[2] The Court granted Capital's motion for monetary damages, prejudgment interest, and attorneys' fees, and denied Capital's motion with respect to exemplary damages. The Court however provided Capital leave to amend to later seek an amended judgment.

*TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001) ("*TCI*").  These three factors, often referred to as the "*Falk* factors," include (1) whether the defendant engaged in culpable conduct that led to the default; (2) whether the defendant had a meritorious defense; and (3) whether reopening the default judgment would prejudice the plaintiff.  *Falk v. Allen,* 739 F.2d 461, 463 (9th Cir. 1984); *TCI*, 244 F.3d at 696.  Although the "*Falk* factors" are disjunctive, such that a court may decline to vacate a default judgment upon a finding of any one of the factors, district courts are not—as a matter of law—required to deny a motion to set aside a default judgment upon a finding of any of the factors.  *See Brandt v. Am. Bankers Ins. Co. of Fla.*, 653 F.3d 1108, 1111 (9th Cir. 2011).

Moreover, and more crucially, "judgment by default is a drastic step appropriate only in extreme circumstances . . . [and] a case should, whenever possible, be decided on the merits."  *Falk*, 739 F.2d at 463; *Mesle*, 615 F.3d at 1089.  As recently emphasized by the Ninth Circuit, the "rules for determining when a default should be set aside are solicitous towards movants, especially those whose actions leading to the default were taken without the benefit of legal representation."  *Mesle*, 615 F.3d at 1089.  *See also TCI*, 244 F.3d at 695–98.  Accordingly, the Court discusses each of *Falk* factors below, followed by a determination as to whether conditions imposed on the Court's order setting aside the default judgment are warranted.

## *DISCUSSION*

### I.    Defendants' Culpable Conduct

"[A] defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and *intentionally* failed to answer."  *TCI*, 244 F.3d at 697 (emphasis in original).  "The term 'intentionally' means that a movant cannot be treated as culpable simply for having made a conscious choice not to answer; rather, to treat a failure to answer as culpable, the movant must have acted with *bad faith*, such as an 'intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process.' "  *Mesle*, 615 F.3d at 1092 (emphasis added).  Thus, culpability involves more than a parties "nonappearance following receipt of notice of the action, but rather conduct which hindered judicial proceedings."  *TCI*, 244 F.3d at 698.  A district court should consider a "bevy of equitable factors" when determining culpability.  *Id*. at 697.

Capital argues Defendants' conduct was culpable because they: (1) admit they were properly served with the summons and the Complaint in March 2012; (2) admit they discussed the case with a licensed attorney—an individual who contacted Capital's counsel on behalf of all Defendants to clarify scheduling deadlines; and (3) are sophisticated business entities and individuals familiar with legal proceedings in federal court, and thus understand the consequences of missed deadlines. Defendants argue their conduct was not culpable, and thus excusable, because they: (1) never hired the Massachusetts attorney they initially discussed the case with; (2) after speaking with "a few attorneys about the case generally, without hiring any of them," they were under the impression that it would be foolish to take the case on *pro se* because "one misstep could cost them tens or hundreds of thousands of dollars;" and (3) they believed that there was no way Capital would be able to obtain a judgment against them because the case is based on frivolous and unsubstantiated allegations. Defendants further argue that Capital seeks to apply the more stringent culpability standard articulated by the Ninth Circuit in *Franchise Holding II, LLC v. Huntington Restaurants Group, Inc.*, 375 F.3d 922 (9th Cir. 2004), which the *Mesle* court explained is not the "ordinary standard for Rule 55(c) and 60(b) motion[s]," and is only applicable where the defaulting party is represented by counsel or is a "legally sophisticated entity or individual." 615 F.3d at 1093-94.

Although this is a close question, the Court finds Defendants failure to respond to the Complaint after discussing the action with several attorneys, coupled with Defendants' knowledge of the legal system through past involvement in federal litigation—albeit in Massachusetts—is sufficient to warrant a finding of inexcusable culpable conduct.[3] Moreover, this case can be differentiated from several cases cited by the *TCI* court, wherein the defaulting parties' conduct was found excusable. *See TCI*, 244 F.3d at 697-98. For example, in *Gregorian v. Izvestia*, 871 F.2d 1515 (9th Cir. 1989), the Ninth Circuit found that where a party knew about the litigation and was served with the summons and the complaint, but elected not to answer or otherwise respond based on the mistaken belief that the court lacked subject

---

[3] As noted by Capital, and uncontested by Defendants, Defendants experience in federal litigation includes the following: *Trans-Spec Truck Service Inc. v. Caterpillar Inc.*, United States District Court, District of Massachusetts, Case No. 04-cv-11836, filed August 23, 2004; *Michael Brault v. Truck Tire Service Corporation/Truck Tire Service Corporation*, United States District Court, District of Massachusetts, Case No. 02-cv-12371, filed December 10, 2002; *Joseph M. Howard, Jr. v. Country Coach, Inc.*, United States District Court, District of Massachusetts, Case No. 02-cv-11474, filed July 19, 2002.

matter jurisdiction over the action, such conduct was excusable rather than culpable. Moreover, in *Bateman v. United States Postal Service*, 231 F.3d 1220 (9th Cir. 2000), the court held that an attorneys sudden absence from the jurisdiction to care for a family emergency warranted vacating a judgment issued for failure to respond to a pending summary judgment motion. Finally, in the often cited case *Falk v. Allen*, wherein the Ninth Circuit articulated the factors currently considered by this Court, the Ninth Circuit stated that leaving the country for medical reasons and defendants failure to obtain legal counsel in the face of diligent attempts, was excusable rather than culpable conduct. 739 F.2d at 461.

      Here, however, Defendants elected not to respond to the properly served Complaint because they believed the Complaint lacked merit, not because they believed the Court lacked subject matter jurisdiction over the matter. Moreover, although the Ninth Circuit has found that a defendant's or counsel's physical or mental illness is a common ground for finding conduct non-culpable, here Defendants do not contend their failure to respond to the action was the result of a physical or mental impairment. *See TCI*, 244 F.3d at 698 n. 5. Finally, based on case law in the Ninth Circuit, courts tend to consider the defaulting parties "general familiarity with legal processes or consultation with lawyers at the time of the default" pertinent to determining whether failing to respond was deliberate, willful or in bad faith.[4] *See, e.g., Meadows v. Dominican Republic*, 817 F.2d 517, 522 (9th Cir. 1987). Thus, "absent some explanation (such as offered by the attorney in *Bateman*), it is fair to expect that individuals who have previously been involved in litigation or have consulted with a lawyer appreciate the consequences of failing to answer and do so only if they see some advantage to themselves." *See TCI*, 244 F.3d at 699 n. 6. Accordingly, the Court finds Defendants' failure to respond to Complaint, entry of default, and corresponding default judgment was the result of culpable rather than excusable conduct.

**II.    Meritorious Defense**

      "A defendant seeking to vacate a default judgment must present specific facts that would constitute a defense." *TCI*, 244 F.3d at 700 (citations omitted). The burden, however, "is not

---

[4] *Meadows v. Dominican Republic*, 817 F.2d 517, 522 (9th Cir. 1987) (finding the defendants culpable in not answering the complaint because they were "aware of the relevant federal law, . . . fully informed of the legal consequences of failing to respond, . . . and sufficiently sophisticated and experienced in the requirements of American law to protect [their] interests"); *Richmark Corp. v. Timber Falling Consultants, Inc.*, 937 F.2d 1444, 1449 (9th Cir. 1991) (finding foreign defendant revealed familiarity with U.S. courts by retaining local counsel to protect its interests in other matters).

extraordinarily heavy." *Id.* "All that is necessary to satisfy the 'meritorious defense' requirement is to allege sufficient facts that, if true, would constitute a defense." *Mesle*, 615 F.3d at 1094. *See also O'Connor v. State of Nev.*, 27 F.3d 357, 364 (9th Cir. 1994) ("Where timely relief is sought from a default and the movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the default so that cases may be decided on their merits.").

Capital argues Defendants have not presented a meritorious defense because the law requires "admissible evidence showing facts supporting the defense or the defenses," and "simple denials and conclusory statements are inadequate." (Doc. No. 20, p. 10:18-28.) To support this allegation, Capital cites case law from the Eastern District of Virginia and the Eastern District of Pennsylvania, none of which are binding, and both of which conflict with current Ninth Circuit precedent. *Trueblook v. Grayson*, 32 F.R.D. 190, 196 (E.D. Va. 1963); *Foy v. Dicks*, 146 F.R.D. 113, 116 (E.D. Pa. 1993). As stated by the Ninth Circuit, to justify vacating a default judgment the defaulting party must *only* present specific facts that would constitute a defense. *See Franchise Holding II*, 375 F.3d 922, 926 (9th Cir. 2004) (emphasis added). The ultimate question as to the validity or the merit of the defense or defenses is a question to be determined later in the litigation—after the court rules on the motion to vacate the default judgment. *See Mesle*, 615 F.3d 1094.

Here, Defendants argue they have a meritorious defense because: (1) Capital already released Defendants' "hold back" with respect to all but less than $100,000 of the outstanding invoices, which Capital would never have done if these delinquent accounts did in fact exist; (2) Defendants never had more than $20,000 in delinquent accounts; and (2) although Defendants repeatedly requested Capital to provide documentation supporting the "so-called delinquent accounts," Capital refused. (Howard Decl. ¶ 3.) Moreover, Defendants allege that after they received the Repurchase letter from Capital, which demanded that Trans-Spec immediately repay $216,326.09—consisting of $183,239.58 of supposedly delinquent accounts and $33,086.51 in accrued fees—Trans-Spec reviewed its books and records and found that "there could be at most $20,000 in delinquent accounts."[5] (Howard Decl. ¶¶ 4, 5.)

---

[5] Defendants allege this can be supported by a senior executive at Aggregate Industries, Inc., a payor on an allegedly delinquent account, and the Aggregate Industries, Inc. computer database. (Doc. No. 21, pp. 7-8.)

Capital argues Defendants allegations do not suffice, as they are merely "general denials" of Defendants extent of liability. The Court is not inclined to agree. Defendants' statements that there are no more than $20,000.00 due and owing in delinquent accounts, if true, is enough to constitute a meritorious defense under current Ninth Circuit precedent. *Mesle*, 615 F.3d at 1094. ("[T]he question whether the factual allegation [i]s true" is not to be determined by the court when it decides the motion to set aside the default. Rather, that question "would be the subject of the later litigation.") (internal citations omitted).

## III. Prejudice to Plaintiff

In determining whether the plaintiff will be prejudiced, "the standard is whether [plaintiff's] ability to pursue his claim will be hindered." *Falk*, 739 F.2d at 463. "To be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case." *TCI*, 244 F.3d at 701. "[T]he delay must result in tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion." *Thompson v. Am. Home Assur. Co.*, 95 F.3d 429, 433-34 (9th Cir. 1996).

Here, the Court finds that setting aside the default judgment will not be prejudicial to Capital. Although Capital has spent a significant amount of time and resources since filing the Complaint, no tangible harm will result from re-opening the case and allowing a determination on the merits. Furthermore, the slight delay in resolution of this case will not result in the loss of evidence, increased difficulties in discovery, or the ability of Capital to obtain relief through litigation.[6] *See E. & J. Gallo Winery v. Cantine Rallo, S.P.A.*, 430 F. Supp. 2d 1064, 1091 (E.D. Cal. 2005) ("Plaintiff offers no suggestion that it will not be fully able to prosecute its claims.").

Accordingly, after a consideration of all the *Falk* factors, the Court finds the default judgment should be vacated and Defendants should have an opportunity to argue the merits of the case. Specifically, the Court finds that even though Defendants conduct was culpable, Defendants have presented potential meritorious defenses, the presentation of which will not prejudice Capital in continuing to

---

[6] The Court entered default judgment against Defendants on October 10, 2012, (Doc. No. 15), and on November 19, 2012, (Doc. No. 17), Defendants filed the instant motion.

advocate the merits of their claims.  *TCI*, 244 F.3d at 697; *Haw. Carpenters' Trust Funds v. Stone*, 794 F.2d 508, 513 (9th Cir. 1986); *Am. Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996).

**IV.     Conditions on Setting Aside the Default Judgment**

Even where a court finds the merits of the case weigh in favor of vacating a default judgment, Rule 60 permits a court to impose "just terms" conditioning an order setting aside a judgment.  *See* Fed. R. Civ. P. 60(b) (court may set aside judgment on "just terms"); *Brandt*, 653 F.3d at 1110 (noting conditions set by district court); *Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. La. Hvdroiec*, 854 F.2d 1538, 1546–47 (9th Cir. 1988) (trial court has discretion to set conditions to set aside default judgment).

Here, Capital requests that in the event the court grants Defendants' motion, it should do so on the condition that Defendants reimburse Capital for the fees, costs, and expenses Capital has suffered as a result of Defendants "game playing and duplicity." (Doc. No. 20, p. 13:4-6.)  Specifically, Capital urges the Court to require Defendants to reimburse Capital for the attorneys' fees and costs incurred in (1) serving Defendants; (2) procuring entry of default and default judgment; (3) opposing Defendants' motion to set aside the default judgment; and (4) appearing at the hearing for the instant motion.  In total, Capital seeks reimbursement in the amount of $55,204.15.  In response, Defendants argue the Court should not condition setting aside the default judgment on payment of Capital's attorneys' fees because Defendants did not engage in deliberate conduct, the fees requested by Capital are excessive, and Defendants do not have the funds to pay this amount. (Doc. No. 21, p. 9-10.)

Although the Court agrees with Defendants that the fees requested by Capital are excessive, as they include fees and costs beyond those associated with the present motion, the Court also finds that Capital was required to expend unnecessary attorneys' fees as a result of Defendants' actions.  Thus, although Defendants' conduct was not culpable in the sense that it precludes setting aside the default—in light of the other *Falk* factors—Defendants' conduct unnecessarily and unfairly imposed additional burdens on Capital.  The Court previously concluded that Capital reasonably incurred $31,925.72 in fees and expenses in bringing this action, and pursuing the entry of default and default judgment. (Doc. No. 15.)  Here, however, because Capital may still recover the fees and costs associated with filing the Complaint, and pursuing the entry of default and default judgment in the event

they are ultimately successful in the underlying action, the Court finds such fees and costs unwarranted as a condition for setting aside the judgment. On the other hand, the Court finds that if Defendants had otherwise responded or contacted Capital prior to entry of judgment, Capital would not have expended certain fees and costs associated with opposing Defendants' instant motion to vacate the default judgment.

Therefore, after reviewing the detailed attorney billing record submitted by Capital, and its counsel's attached declaration, the Court finds Capital incurred approximately $7,618.00 in fees and costs in opposing the instant motion.[7] Accordingly, as a condition of setting aside the entry of default and default judgment, Defendants must reimburse Capital in the amount of $7,618.00. Failure to reimburse Capital for its reasonable attorneys' fees and costs incurred in opposing the instant motion, by the deadline noted below, will result in the Court revoking this order and reinstating the entry of default and corresponding judgment. (Doc. Nos. 9, 15, 16.)

## *CONCLUSION*

For the reasons set forth above, the Court hereby **GRANTS** Defendants' motion to set aside the default judgment. (Doc. No. 17.) Specifically, the Court makes the following findings:

1. The underlying entry of default and default judgment entered against Defendants are hereby **VACATED** (Doc. Nos. 9, 15, 16);
2. Capital's request for attorneys fees' is **GRANTED IN PART AND DENIED IN PART**. Defendants must submit payment to Capital in the amount of **$7,618.00**. Defendants must submit payment to Capital no later than **February 20, 2013**. Failure to submit timely payment will result in a revocation of this Order and a reinstatement of the entry of default and default judgment; and

---

[7] Capital states that it spent 18.8 hours at $285.00 per hour for a total of $5,358, and 5 hours at $450.00 per hour for a total of $2,250, reviewing and opposing the instant motion. Capital also states it spent $10 in duplication fees ofr the instant motion. (Luther Decl., Ex. A.) Because Capital provided the Court with a detailed attorney billing sheet, albeit one that included all fees and costs from the date the Complaint was filed, the Court did not find it necessary to require Capital to re-file the document limited to those fees and costs associated with the instant motion. Moreover, the Court found it unnecessary for the parties to submit supplemental briefs on the issue of attorneys fees. Neither the hourly rate nor the time expended on the instant motion "shocks the conscience." *Mendez v. County of San Bernardino*, 540 F.3d 1109, 1127 (9th Cir. 2008).

3. Defendants are ordered to answer or otherwise respond to the Complaint no later than **February 20, 2013.** Failure to do so will result in the Court reinstating the default judgment.

IT IS SO ORDERED.

DATED: January 4, 2013

_____
Hon. Anthony J. Battaglia
U.S. District Judge